# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JAYHAWK 910VP, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 18-1153-KGG |
| WindAirWest, LLC, | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

NOW BEFORE THE COURT is the supplement (Doc. 135) to the Motion for Attorney's Fees (Doc. 121) filed by Plaintiff Jayhawk 910VP, LLC ("Jayhawk").  For the reasons set forth herein, the Court **GRANTS in part** Jayhawk's request for fees and expenses.

## BACKGROUND

On May 18, 2021, this matter came on for trial to the Court.  On July 14, 2021, the Court issued its Findings of Fact and Conclusions of Law pursuant to Rule 52, Federal Rules of Civil Procedure.  (Doc. 117.)  Therein, the Court held that Plaintiff is entitled to judgment in the amount of $125,000 against Defendant for non-payment of the additional charter fee while Defendant is entitled to judgment against Plaintiff for failing to pay charter expenses in the amount of

1

$39.652.08.  (*Id*.)  This resulted in a net judgment to Plaintiff against Defendant in the amount of $85,347.92.  (*Id*.)  Additional background is contained in the Court's Findings of Fact and Conclusions of Law (Doc. 117, at 1-14) and Memorandum & Order on cross motions for attorney's fees (Doc. 128, at 2-3.)  Those factual findings are incorporated herein by reference.

Following the trial, the parties were ordered to file simultaneous motions for attorney's fees, which were filed on September 3, 3021.  (Docs. 120, 121.)  At the request of the parties, the Court held the motions in abeyance pending their continued efforts to reach a mutual resolution of the attorney's fees issues, which were unsuccessful.  The Court ultimately found that Plaintiff was the "prevailing party" in the litigation, thus entitled to attorney's fees.  (*See* Doc. 128, at 4-8 (analysis of prevailing party incorporated by reference).)  The Court granted Plaintiff's motion for attorney's fees (Doc. 121) while denying Defendant's cross-motion (Doc. 120).  (Doc. 128, at 8.)

Thereafter, Plaintiff was ordered to submit a supplement (Doc. 135) to its Motion for Attorney's Fees addressing the dollar amount of fees sought. Defendant responded (Doc. 139) and no reply was allowed.  The parties were informed that in reaching a conclusion as to the amount of fees to award, the Court would exercise its equitable powers based on the overall outcome of this litigation. (*See* Doc. 128, at 8 (citing **Fusion, Inc. v. Nebraska Aluminum Castings, Inc**.,

962 F.Supp. 1392, 1397 (D. Kan. 1997)).)  The amount proposed by Jayhawk is $228,476.14, which encompasses $219,564.50 in legal fees and $8,911.64 in expenses.[1]  (Doc. 135, at 9.)  Within this context, the Court will now address the Jayhawk's request for attorney's fees and expenses.

## ANALYSIS

In determining the amount of attorney's fees to award, the Court calculates a "lodestar" fee amount by multiplying a reasonable hourly rate by the reasonable number of hours.  **Sheldon v. Vermonty**, 237 F.Supp 2d 1270, 1274 (D.Kan. 2003) (citing **Naff v. Davol, Inc**., 28. Kan. App. 2d 726, 729, 20 P.3d 738 (2001)).  As an initial matter, the Court notes that the parties are in agreement that the hourly rate requested by Jayhawk is reasonable.  (Doc. 135, at 8; Doc. 139, at 4.)  The parties disagree, however, as to the other element of the loadstar equation – the number of billable hours to be reimbursed.

The lodestar amount is presumed to be a reasonable fee once established.  **Robinson v. City of Edmond**, 160 F.3d 1275, 1281 (10th Cir. 1998).  A court may increase or decrease the lodestar amount "to account for the particularities of the suit and its outcome."  **Zinna v. Congrove**, 680 F.3d 1236, 1242 (10th Cir. 2012); see also **Robinson v. ECollect Solutions**, No. 21-2021-SAC-KGG, 2022 WL 218635, at *1 (D. Kan. Jan. 25, 2022).  "The party requesting attorney fees bears

---

[1] The expenses consist of deposition fees, transcripts, and mediator fees.  (*Id*.)

3

the burden of proving the amount of hours spent on the case and the appropriate hourly rates." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000) (citing *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998)).  In adjusting the lodestar, Court's typically consider eight factors identified in Rule 1.5(a) of the Kansas Rules of Professional Conduct.[2]  *Davis v. Miller*, 269 Kan. 732, 751, 7 P.3d 1223 (2000); *BMO Harris Bank, N.A. v. Dunn*, 31.  "Often, however, no adjustment is needed as the eight factors listed in Rule 1.5 are the facts on which the … the lodestar calculation is made." *Sheldon v. Vermonty*, 237 F.Supp. 1270, 1274 (D.Kan. 2002).

---

[2] The eight factors enumerated by the Kansas Rules of Professional Conduct 1.5(a) are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

All factors are controlling and given equal weight in the Court's analysis. *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 951, 135 P.3d 1127, 1142 (2006).

Jayhawk argues that it previously established that "all of WAW's counterclaims were defenses to Jayhawk's claim for breach of the 2016 Dry Lease," thus "Jayhawk had to successfully defend the claims in order to prevail and enforce the terms of the 2016 Dry Lease." (Doc. 135, at 5.) Jayhawk opines that "all of the fees and expenses reasonably incurred in defending these claims should be reimbursed and the terms of the 2016 Dry Lease." (*Id*.)

WAW counters that this amount is unreasonable because Jayhawk filed its lawsuit "at a time when it too was in breach of the parties' contractual agreements. Specifically, the Court found that Jayhawk breached its agreement under the 2017 Side Letter agreements when it failed to pay expenses during charter operations." (Doc. 139, at 3 (citing Doc. 117, at 19).)

Jayhawk asserts that it has "always conceded that its recovery of this amount was subject to reduction of any unpaid operating expenses incurred in the charter of Jayhawk's Citation X aircraft under the 2017 Dry Lease." (Doc. 135, at 1.) WAW responds that "the accuracy of Jayhawk's introductory claim is questionable." (Doc. 139, at 4.) According to WAW,

> [w]hen Jayhawk filed suit in May 2018, Jayhawk owed WAW well over $125,000 in outstanding charter expenses. It is hard to believe that Jayhawk agreed it owed the outstanding charter expenses when the amount owed exceeded Jayhawk's potential recovery under the 2016 Dry Lease. Instead, Jayhawk paid down the outstanding charter expenses over the course of this lawsuit because it was strategic to do so. Had Jayhawk

> not – given the outcome of this case – the tables would be turned and WAW would be the prevailing party as WAW's recovery under the 2017 Dry Lease would exceed the $125,000.

(*Id.*)

WAW opines that awarding attorney's fees and costs to Jayhawk "creates a windfall" for Jayhawk that is "inequitable given the parties' history and the course of events since Jayhawk first filed suit in May 2018." (*Id.*) WAW asks the Court to "exercise its discretion and find that only a nominal award of attorney's fees and costs is reasonable." (*Id.*)

In its briefing, Jayhawk anticipated WAW's position that Jayhawk should not be entitled to fees incurred litigating WAW's tort claims. Jayhawk argues that this argument fails because it established that "all of WAW's counterclaims, whether tort or contract, served as its defenses to Jayhawk's claim for breach of the 2016 Dry Lease." (Doc. 135, at 7.) In other words, according to Jayhawk, for it to "prevail on its single claim, it had to successfully defend all of WAW's counterclaims." (*Id.*) Jayhawk also argues that "all of the parties' claims and defenses arise out of the same transaction and are so interrelated that their prosecution or defenses entailed proof or denial of essentially the same facts." (*Id.*) Thus, Jayhawk argues it is entitled to fees incurred in successfully defending WAW's counterclaims. (*Id.*)

6

Exercising its discretion to award attorney's in an equitable manner, ***Fusion, Inc.*** 962 F.Supp. at 1397, the Court finds that it would be unreasonable for Jayhawk to be awarded the entirety of its legal fees and costs incurred in this litigation. Although Jayhawk was the prevailing party, the fact remains that WAW was also awarded almost $40,000 in damages on one of its cross-claims, which served as an offset to Plaintiff's damages award. Further, it is undisputed that Jayhawk paid down the outstanding charter expenses it owed to WAW over the course of this litigation.

Given the totality of these circumstances, the Court finds a 25% reduction of Plaintiff's legal fees and expenses to be equitable. The Court thus awards Plaintiff legal fees and expenses in the amount of **$171,357.11**.

**IT IS SO ORDERED**.

Dated this 26th day of January, 2022.

/s Kenneth G. Gale
KENNETH G. GALE
United States Magistrate Judge